JOAN BAGLEY & others[1] vs. ILLYRIAN GARDENS, INC., & another.[2]

No. 89-P-724.

Worcester. October 10, 1989. - November 27, 1989.

Present: ARMSTRONG, CUTTER, & PERRETTA, JJ.

*Res Judicata. Judgment*, Preclusive effect. *Jurisdiction*, Housing Court.
   *Housing Court*, Jurisdiction. *Practice, Civil*, Judgment, Appeal, Re-
   script from appellate court, Frivolous actions. *Housing. Zoning*, Low
   and moderate income housing, Appeal.

Where the Supreme Judicial Court reversed the judgment of the Housing
   Court in a civil action on the ground that the Housing Court lacked
   subject matter jurisdiction, neither principles of claim preclusion nor
   any provision of Mass.R.A.P. 23 or 28 operated to prevent relitigation
   of the action in the Superior Court. [128-131]
In an action for judicial review of a decision of a zoning board of appeals
   granting a comprehensive permit for construction of low or moderate
   income housing under G. L. c. 40B, § 21, the judge's warranted find-
   ings of fact established the requisite regional and local need for the
   housing authorized by the permit. [131-133]
A party's appellate arguments with respect to evidence contested at a civil
   trial were not "frivolous" as to warrant assessment of costs and dam-
   ages under Mass.R.A.P. 25. [133-134]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on October 7, 1986, and October 8, 1986, respectively.

CIVIL ACTION commenced in the Worcester County Divi-
sion of the Housing Court Department on October 16, 1986.

After review by the Supreme Judicial Court, 401 Mass.
822 (1988), the cases were transferred to the Superior Court
Department and were heard by *Robert V. Mulkern*, J.

*Burton Chandler* for the plaintiffs.

[1]Twenty-five other residents of the neighborhood of the proposed
construction.
[2]The zoning board of appeals of Worcester.

*Bridget Murphy*, Assistant City Solicitor, & *David A. Talman* (*Michael C. Moschos* with them) for the defendants.

PERRETTA, J. After the judgment of the Worcester division of the Housing Court affirming the grant of a comprehensive permit under G. L. c. 40B, § 21, was reversed for want of jurisdiction, see *Bagley* v. *Illyrian Gardens, Inc.*, 401 Mass. 822 (1988) (*Illyrian I*), the rescript was issued to the Housing Court in the normal course. See Mass.R.A.P. 23, as amended, 367 Mass. 921 (1975). There the plaintiffs moved for entry of final judgment but the motion was denied and the matter transferred to the Superior Court. The plaintiffs again requested entry of a final judgment in that court. A judge denied the motion, ruling that the reversal of the Housing Court judgment "left the merits of the action for determination here." The matter was then remanded to the zoning board of appeals of Worcester (board) for consideration of the issue of the regional need for the comprehensive permit, see *Illyrian I*, 401 Mass. at 826, after which the plaintiffs' claim was tried in the Superior Court. The board's decision granting the permit was affirmed by a judgment of that court. We conclude that the proceedings subsequent to the issuance of the rescript from the Supreme Judicial Court were not barred by principles of res judicata and that there was evidentiary support for the judge's finding that there is need for the housing authorized by the permit. We affirm the judgment.

1. *The Superior Court Proceedings.*

It is the plaintiffs' argument that all proceedings subsequent to the rescript in *Illyrian I* were barred by the doctrine of res judicata and Mass.R.A.P. 23 and 28, the latter as amended, 378 Mass. 925 (1979). They have misconstrued the doctrine and the rules.

" 'Res judicata' is the generic term for various doctrines by which a judgment in one action has a binding effect in another. It comprises 'claim preclusion' and 'issue preclusion.' 'Claim preclusion' is the modern term for the doctrines tradi-

tionally known as 'merger' and 'bar,' and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies." *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). The assertion here is one of claim preclusion.

As support for their position that the defendants should have been precluded from relitigating this matter in the Superior Court, the plaintiffs rely upon *Harker* v. *Holyoke*, 390 Mass. 555, 558-561 (1983). There the plaintiffs took no appeal from a judgment entered by the Housing Court whose subject matter jurisdiction over the claim there in issue was "fairly debatable." *Id.* at 559. The judgment was, therefore, a final judgment. Thereafter, the plaintiffs sought to attack the judgment collaterally by bringing the same claim in the Superior Court. Based upon the circumstances there presented, the court held that the plaintiffs were not entitled to relitigate their claim in the Superior Court: "The public interest in enforcing limitations on courts' subject matter jurisdiction is ordinarily served adequately by permitting direct attack on judgments. Although there may be rare circumstances in which sound policy requires that finality give way to the enforcement of limitations on a court's authority by collateral attack, this is not such a case." *Id.*, at 558-559.

Whatever similarities that the plaintiffs see between the circumstances in *Harker* and the present case, there is one major and dispositive difference. A final judgment has yet to be entered in the present case which, thus far, has been one continuous proceeding. "The doctrine of claim preclusion makes a valid, *final* judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action. See *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 279-280 (1933), and cases cited" (emphasis supplied). *Heacock* v. *Heacock*, 402 Mass. at 23. See also Restatement (Second) of Judgments § 13 (1982).

It is most likely this distinction which leads to the plaintiffs' contention that after issuance of the rescript in *Illyrian I*, they were entitled to entry of a final judgment in the

Housing Court under rules 23 and 28. These rules contradict rather than support their claim. As earlier noted, this action was brought in the Superior Court and transferred to the Housing Court over the plaintiffs' objection. Those proceedings ended in a judgment affirming the board's grant of the permit. Whatever finality might have attached to that judgment if left undisturbed was lost by the plaintiffs' notice of appeal from it. See Mass.R.Civ.P. 54(a), and 62(a)-(d), 365 Mass. 820, 829 (1974). See also *Harker* v. *Holyoke*, 390 Mass. at 558, n.3. Cf. *Brown* v. *Massachusetts Port Authy.*, 371 Mass. 395, 399-402 (1976). As also earlier noted, that judgment was reversed for the Housing Court's want of jurisdiction of an appeal from a grant of a comprehensive permit.

By definition, a rescript is the "order, direction, or mandate of the appellate court disposing of the appeal." Mass.R.A.P. 1(c), 365 Mass. 845 (1974). Rule 23 simply provides, in pertinent part, that the "rescript of the court shall issue to the lower court twenty-eight days after the date of the rescript unless the time is shortened or enlarged by order." Citing rule 28, the plaintiffs insist that after the rescript providing "judgment reversed" was issued, they were entitled as matter of law to entry of a final judgment in the Housing Court. If they were correct, it would follow that the retransfer of the case to the Superior Court was erroneous, as would be the Superior Court order denying their renewed or refiled motion for entry of a final judgment.

Rule 28 reads, in full: "When the rescript from the appellate court sets forth the text of the judgment to be entered, the clerk of the lower court shall, upon receipt of the rescript, prepare, sign and enter the judgment which has been ordered. If the rescript orders settlement of the form of the judgment in the lower court, the clerk of the lower court shall sign and enter the judgment after settlement. Notation of a judgment in the lower court docket constitutes entry of the judgment." Thus, the rescript disposes of the appeal but does not necessarily end the proceedings. Whether a final judgment is to be entered depends upon the terms of the rescript and not its mere issuance. "It should always be

remembered that it is the judgment of the lower court, not the rescript (however much the terms of the rescript may shape the final judgment) which regulates the nature and quantum of any relief obtained. Until that judgment has been made to conform to the rescript, the litigation is not terminated." Reporters' Notes to Mass.R.A.P. 28, Mass. Ann. Laws, Rules of Appellate Procedure, at 388 (Law Co-op. 1982).

Neither the Housing Court nor the Superior Court had the authority to allow the plaintiffs' motion for entry of final judgment because the rescript mandated otherwise. What the plaintiffs overlook is the fact that the mandate "judgment reversed" does not translate into the form of a final judgment which would be in the plaintiffs' favor, that is, reversal of the judgment with the additional order that a new judgment be entered to the effect that the board's decision was in excess of its authority and, therefore, annulled. See, e.g., *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 13 (1981); *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 715 (1988). The meaning and effect of the words "judgment reversed" are quite different. Such an order causes the judgment from which the appeal was taken to remain without force and effect and the rights of the parties to be established upon a new trial. See *Cheny* v. *Boston & Maine R.R.*, 246 Mass. 502, 505 (1923); *Woodworth* v. *Woodworth*, 273 Mass. 402, 406-407 (1930); *McCarthy* v. *Daggett*, 351 Mass. 337, 338 (1966).

It follows from the order set out in the rescript that as the Housing Court was without subject matter jurisdiction of the controversy raised by the complaint, the retransfer of the case for trial in the Superior Court was in compliance with the mandate of the Supreme Judicial Court.

2. *The Superior Court Judgment.*

In reversing the Housing Court judgment on jurisdictional grounds, the Supreme Judicial Court chose to consider the plaintiffs' arguments concerning the sufficiency of the evidence on the issues of regional and local need for the hous-

ing. That choice was based upon the likelihood of a retrial. After reviewing the evidence presented, the court concluded that "[w]hile there was extensive testimony going to the local need for subsidized housing, the record is devoid of any evidence as to regional need." *Illyrian I*, 401 Mass. at 826.

At the conclusion of the trial in the Superior Court, the judge made detailed findings of fact concerning regional and local needs. The plaintiffs again attack the evidentiary support for the findings as to need, both regional and local. Reviewing the evidence found credible and worthy of weight by the judge, we conclude that it establishes the requisite showing of need. Cf. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 363 Mass. 339, 365-367 (1973); *Zoning Bd. of Appeals of Wellesley* v. *Housing Appeals Comm.*, 385 Mass. 651, 658 (1982).

In making his ultimate finding that "[t]here exists an urgent local and regional need for housing for elderly poor," the judge relied upon evidence showing: (1) the actual and reasonably projected number of elderly persons in Worcester and the surrounding communities who are or soon will be eligible for low and moderate income housing; (2) the number of available units, which have a current occupancy rate of 99.5%, the ".5% representing apartments being refurbished between occupancies;" and (3) the number of people on waiting lists for units. The waiting lists were found by the judge to be "reliabl[e] indicat[ors]" of local and regional need. The plaintiffs argue that aside from the waiting lists, the evidence shows only the number of eligible elderly and not the number of eligible elderly in need of housing.

As grounds for disregarding the waiting lists, the plaintiffs contend first that the lists were inadmissible hearsay which had been excluded by the judge. Simply put, the record directly contradicts the claim. What the judge excluded from evidence upon the plaintiffs' objection to the question was the answer to the inquiry concerning the results of the witnesses' "contact" with various housing authorities. As for the hearsay nature of the waiting lists, we need only note that the

plaintiffs took no objection and elicited and relied upon much of that information at trial.

We think the real nature of the plaintiffs' claim in respect to the waiting lists is that the judge found that "they reliably indicate local and regional need." The plaintiffs refute the judge's assessment of the lists on the grounds that they show a present wait of six months for a well-maintained unit which the eligible elderly will sometimes refuse. There was testimony, however, that refusals were most often based upon location (areas perceived by the elderly to be unsafe) and size (inadequacy of an efficiency unit for an elderly couple).

In finding that the waiting lists were reliable, the judge noted that "they cannot be mathematically precise for a variety of reasons." It does not follow, however, that the judge was then required to ignore or to afford little or no weight to those lists on the ground urged by the plaintiffs. The facts as found by the judge and supported by the evidence show need, regional and local, for the housing authorized by the comprehensive permit.

3. *Damages for Delay.*

Pursuant to Mass.R.A.P. 25, as amended, 378 Mass. 925 (1979), the defendant Illyrian Gardens, Inc., claims that the present appeal is frivolous and seeks damages caused by the delay for the period of the appeal as well as appellate counsel fees. Considering those factors discussed in *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 457-459 (1984), we do not think it here appropriate to make a rule 25 award.

In denying the request, we have in mind that the plaintiffs' argument concerning claim preclusion was based upon their erroneous reading of *Harker* v. *Holyoke*, 390 Mass. at 558-561, which they apparently believed provided analogous support for their position on the basis that they resisted the transfer of their claim to the Housing Court. Further, although we view the argument concerning the hearsay nature of the waiting lists as frivolous for the reason, if no other, that the plaintiffs did not save their rights, we do not view their second attack on that evidence as devoid of merit for purposes of considering a rule 25 request for damages.

In his memorandum of decision, the judge remarked that the plaintiffs had argued "forcefully" that the testimony of the expert witnesses showed only the number of eligible elderly applicants rather than the number of eligible elderly in need of low and moderate income housing. Thus, much turned on the waiting lists which the judge found to be reliable indicators notwithstanding their lack of mathematical precision. In view of the paucity of decisional law on any standard of measurement in determining regional and local need, we cannot say that the plaintiffs' argument concerning the unreliability of the lists "had lost all vestige of merit after the . . . [Superior Court] judge made his decision." *Allen* v. *Batchelder*, 17 Mass. App. Ct. at 458. In these circumstances, we deny the request for damages.

*Judgment affirmed.*