Fahey, J.
This is a medical malpractice case in which the minor plaintiff, Brent Rolli, (“Brent”) seeks damages as a result of permanent injuries sustained during birth. Plaintiffs claim, among other claims, that the nursing staff at Metro West negligently failed to document clinical assessments, negligently failed to formulate a management plan, negligently failed to elicit physician responses to clinical signs of fetal hypoxia during labor and negligently failed to provide adequate training, supervision and procedures for obstetrical staff. The plaintiffs now ask the court to compel answers from the deponent, Joanne Nevells, and two prospective deponents, Deborah Barrett and Dr. Howard Blanchette (“deponents”) concerning three categories of questions: 1.) deponents’ understanding and interpretation of hospital policies; 2.) deponents’ expectations of what nurses under their supervision would do in certain circumstances; 3.) deponents’ interpretations of one fetal tracing and what action each would have taken had the tracing been brought to their attention. Defendants oppose this Motion and seek a Protective Order on the grounds that 1.) the requested discovery is irrelevant and 2.) the questions improperly illicit expert testimony as the deponents are non-parties who did not personally witness the events leading to Brent’s injuries.

BACKGROUND

Brent Rolli (“Brent”) was born on March 28, 1997 at which time he sustained severe hypoxic-ischemic damage to multiple organs, particularly his brain. Plaintiffs have alleged that Columbia, as the owner of the hospital, Metro West, on the day of Brent’s birth, is vicariously liable for its negligent failure to provide adequate training and supervision of labor and delivery personnel. Specifically, plaintiffs allege that the staff nurses negligently failed to ensure that the electronic fetal monitor was continuously recording fetal heart rate and uterine contractions; that they failed to correctly interpret electronic fetal heart tracings; that they failed to take appropriate action after Brent’s birth, including alerting the physi *606 cian, discontinuing pitocin infusion and other interventions to improve fetal oxygenation; that they failed to notify others iri the hospital’s “chain of command” in the event of an inappropriate response by the physician; and that Columbia negligently failed to train and supervise its labor and delivery nurses with respect to the interpretation of electronic fetal monitoring tracings, appropriate interventions for fetal distress and its own hospital policies and procedures.
Nurse Nevells, the charge nurse in Metro West’s labor and delivery unit at the time of Brent’s birth, was deposed on June 13, 2001. In addition to the deposition testimony of Nurse Nevels, this Motion is brought concerning the anticipated depositions of Deborah Barrett, Metro West’s Nurse Manager at the time of Brent’s birth, and Dr. Howard Blanchette, Metro West’s Chief of Obstetrics at the time of Brent’s birth, who have not yet been deposed. When the deponent was asked any of the three categories of questions, defense counsel objected and instructed the deponent not to answer. The basis of the defendants’ objections is that Nurse Nevells and the other deponents’ understanding of hospital policy is irrelevant and that the questions called for expert testimony outside the scope of permissible discovery.

DISCUSSION

At oral argument, defense counsel stated that his sole basis within Mass.R.Civ.P. 30(c) for instructing the deponent not to answer was “to enforce a limitation on evidence directed by the court.”[1] Counsel bases that claim, not on any limitation already imposed in this case, but rather on case law generally applicable to depositions, most of which pre-dates the enactment of Rule 30(c) in its presentform. Mass.R.Civ.P. 30(c) was adopted specifically to address the problems caused by attorneys telling their clients not to answer deposition questions. See Estella Long v. Simon Roy, M.D., et al., 10 Mass. L. Rptr. No. 6, 140, 141 (1999). I read “to enforce a limitation on evidence directed by the court” to mean a limitation already imposed in a specific case, i.e., a particular order. No such order has yet been entered in this case. Nonetheless, accepting defendants’ interpretation, which is uncontested by the plaintiffs, I rule that, in this case, no deponent is required to formulate opinions on-the-spot during their depositions. However to the extent that questions from categories one and two seek discovery other than “on-the-spot opinions,” the topics are at least relevant and calculated to lead to the discovery of admissible evidence. Mass.R.Civ.P. 26(b)(1). As to the first two categories of questions, deponents were employees of the hospital and therefore have, presumably, personal knowledge of the policies and their expectations of the employees whom they supervised.[2]
“Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...” “It is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.” Mass.R.Civ.P. 26(b)(1). In light of the plaintiffs’ claims of negligent supervision and negligent training, questions concerning the first and second categories of questions regarding deponents’ understanding of hospital policies as well as their expectations of nurses under their supervision, are within the scope of permissible discovery.
Having dealt with defense counsel’s relevance objection, I next consider defendants’ claim that the questions plaintiffs would ask of the deponents would require deponents to testify as experts, which is beyond the scope of permissible discovery absent either agreement of the parties or court approval, neither of which has occurred in this case. As to the third category of questions, concerning actions deponents would have taken had they been shown one fetal tracing, this line of questioning is solely within the realm of expert testimony, since it seeks to illicit an opinion that was not formed at the time of the incident in question. “A party may not by summons compel the involuntary testimony of an expert witness solely for the expertise he may bring to the trial and in the absence of any personal knowledge on his part related to the issues before the judge and jury.” Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 827-28 (1988) (quoting Commonwealth v. Vitello, 367 Mass. 224, 235 (1975)). The deponents are not parties and have no personal knowledge of the birth at issue, as they were not involved in the care and treatment of either plaintiff mother or child. In these circumstances, considerations of fairness preclude these three deponents from being asked to form opinions on the spot during a deposition concerning this third category of questions, as well as any other topic.

ORDER

For the foregoing reasons, plaintiffs’ Emergency Motion to Compel Deposition Testimony is DENIED as to any question, which requests that the expert form and give an opinion during the deposition, including, but not limited to, those seeking an interpretation of one fetal tracing never before shown to deponents, and defendants’ Counter Motion for a Protective Order is ALLOWED as to this issue. Plaintiffs’ Emergency Motion is ALLOWED as to any questions regarding hospital policy or expectation of hospital staff supervised by deponents to the extent those questions do not require the deponents to form and give an opinion.

 "[C]ounsel for a witness or a party may not instruct a deponent not to answer except where necessary to assert or preserve a privilege or protection against disclosure, to enforce a limitation on evidence directed by the court or stipulated in writing by the parties, or to terminate the deposition and present a motion to the court pursuant to Rules 30(d) or 37(d).” Mass.R.Civ.P. 30(c) (amended 1998).

 “If the expert learned the facts or acquired the opinion without regard to the trial or even the litigation, discovery operates exactly as it does with respect to facts and opinions held by any witness.” Smith and Zobel, Rules of Practice, Massachusetts Practice Series 1975, Vol. 7, pp. 212-13 (Sup. 2001).